**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANA BROWN, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | No: 16-1771 |
| | ) | |
| v. | ) | US District Judge Cathy Bissoon |
| | ) | |
| MIDLAND FUNDING, LLC and | ) | |
| MIDLAND CREDIT MANAGEMENT, | ) | **ELECTRONICALLY FILED** |
| INC., | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

**BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**I.     INTRODUCTION**

Plaintiff, Dana Brown, filed this lawsuit alleging that Defendants, Midland Funding, LLC and Midland Credit Management, Inc., violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692a, *et. seq,* the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa.C.S. 201-1, *et. seq.,* and the Pennsylvania Fair Credit Extension Uniformity Act (FCEUA), 73 Pa.C.S. 2270.1 *et. seq.,* solely because it allegedly failed to comply with the terms of a Consent Order that they (along with Encore Capital Group, Inc. and Asset Acceptance Capital Corp., collectively "Midland") entered into with the Consumer Financial Protection Bureau (CFPB) at File No 2015-CFPB-0022. *See, Complaint.* The Consent Order is attached to the Motion as Exhibit "A." Midland's Motion to Dismiss requests that this Court

grant its Motion and dismiss Plaintiff's Complaint with prejudice because 1) Plaintiff has no standing to bring claims for a breach of the Consent Decree because Plaintiff was not a party to the Consent Decree, or in the alternative because Plaintiff was not intended to be a third party beneficiary of it; 2) The Consent Order does not contain an admission of liability; therefore, the Consent Order contains no decision on the merits and cannot serve to as a basis for violative conduct; 3) Irrespective of the Consent Order, Plaintiff's allegations do not constitute a violation of the FDCPA; and 4) The only means with which to assert a UTPCPL claim against a "debt collector" is through application of the Fair Credit Extension Uniformity Act, ("FCEUA"), 73 P.S. §2270.2; therefore, the UTPCPL claim must be dismissed; and 5) Because Plaintiff cannot establish an FDCPA Violation, Plaintiff's FCEUA claims fail as a matter of law.

## II.   FACTS

A collection action, premised on a breach of contract, was filed on behalf of Midland Funding, LLC against Plaintiff on July 12, 2016 at Magisterial Court 50-3-06, with case number cv-133-2016, arising from Plaintiff's default on her credit card debt obligation originally owed to Citibank, N.A.  *See, Complaint, ¶¶9-10.*  The sole basis for Plaintiff's claims against Midland arise from the Consent Order entered into by the Midland and the CFPB.  *See, Complaint, ¶¶4-16*.

First, Plaintiff alleges that the Consent Order provides that if the Midland engages in any collection action, it must provide the consumer with certain information about the subject debt, including a statement that Midland will, within 30 days, provide the consumer with certain documents, including an original account level document reflecting a purchase, payment or other actual use of the account by the consumer.  *See, Complaint, ¶8.*  Plaintiff contends that these documents were not provided; however, she admits that one statement was provided to him, but

that it was not "an original account level document reflecting a purchase, payment, or other actual use of the account by the consumer." *See, Complaint, ¶13.*

Next, Plaintiff contends that the Consent Order requires that Midland produce a certified or otherwise properly authenticated copy of each bill of sale or other document evidencing the transfer of ownership of the debt and each documents must include a specific reference to the particular debt being collected upon. *See, Complaint, ¶6.* Plaintiff contends that a "generic" affidavit of sale was submitted at the magistrate hearing, but it did not relate to the specific account of Plaintiff. *See, Complaint, ¶11.*

Finally, Plaintiff alleges that the Consent Order requires that Midland produce a chronological listing of the names of all prior owners of the debt and the date of each transfer of ownership of the debt. *See, Complaint, ¶6, ¶¶11-13.* Plaintiff concedes that Bills of Sale were produced; however, she contends that the Bills of Sale do not reference Plaintiff's specific account. *¶¶11-13.*

The singular basis for violative conduct set out in Plaintiff's Complaint is Plaintiff's belief that Midland failed to follow the provisions of the Consent Order. Notably, the Complaint is devoid of any independent facts setting forth a viable FDCPA claim, or, by extension, an FCEUA claim, – that Plaintiff did not owe the debt, that he did not open the account, or that any of the evidence produced in the collection law suit was false, unfair or deceptive or misleading which would be in violation of 15 U.S.C. §1692e or 15 U.S.C. §1692e of the FDCPA. Plaintiff's Complaint should be dismissed because she has no standing to enforce the terms of a Consent Order to which she was not a party or for which she was not an intended beneficiary. Furthermore, the Consent Order does not contain any admission of liability; therefore, it is akin to a plea of *nolo contendere* and is inadmissible to establish liability. Notwithstanding the

Consent Order, none of the facts alleged by Plaintiff support a claim for a violation of the sections of the FDCPA that protect consumers from false or misleading representations or unfair or unconscionable methods of debt collection. Finally, in the absence of a viable FDCPA claim, Plaintiff's claims under the FCEUA fail as a plain matter of law. See 73 P.S. §2270.4(a). Accordingly, Midland respectfully requests that this Motion to Dismiss be granted and Plaintiff's Complaint be dismissed, with prejudice, for failure to state a claim.

### III. STANDARD OF REVIEW

A motion to dismiss filed pursuant to *Federal Rule of Civil Procedure 12(b)(6)* tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.1993)*. In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a *motion to dismiss*, the court accepts as true all well-pleaded factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002)*. In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under *Rule 12(b)(6)*. *Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n. 2 (3d Cir. 1994)*. Under the 12(b)(6) standard, a "court need not … accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Scicchitano v. Uniontown Police Dept., No. 15-1163, 2015 U.S. Dist. LEXIS 153775, 2015 WL 7009512, *2 (W.D. Pa. Nov. 12, 2015)* (quoting *Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended by, 275 F.3d 1187 (9th Cir. 2001))*.

While a complaint does not need detailed factual allegations to survive a *Rule 12(b)(6)* motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (*citing Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986))*. "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

4

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (citing *Twombly, 550 U.S. at 556*).

The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. … Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly, 550 U.S. at 556-57*) (internal citation omitted).

Two working principles underlie *Twombly*. *Iqbal, 556 U.S. at 678*. First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly, 550 U.S. at 555*.) Second, to survive a *motion to dismiss*, a claim must state a plausible claim for relief. *Id. at 679*. "Determining whether a complaint states a plausible claim for relief will … be a content-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* (quoting *Fed R. Civ. P. 8(a)(2)*).

*See, DeHaven v. Planet Home Lending, LLC,* 2016 U.S. Dist. LEXIS 21404, *5-7 (W.D.Pa. February 22, 2016)

### IV. ARGUMENTS

A. **PLAINTIFF DOES NOT HAVE STANDING TO BRING A CLAIM FOR THE ALLEGED VIOLATION OF A CONSENT ORDER ENTERED INTO BY MIDLAND AND THE CFPB.**

The only factual allegations in Plaintiff's Complaint, with respect to an alleged violation of the FDCPA, the FCEUA and the redundant UTPCPL, are that Midland violated the terms of the Consent Order between Midland and the CFPB.  Because Plaintiff was not a party to the Consent Order, she is unable to enforce its terms.  Furthermore, the Consent Order specifically provides that the CFPB is the only entity empowered to enforce the terms of the Consent Order.

*See,* Exhibit "A" ¶*193*.  Because Plaintiff is not the CFPB, Plaintiff lacks standing to pursue perceived breaches of the Consent Order.  Therefore, Plaintiff's Complaint must be dismissed with prejudice.

The United States Supreme Court addressed this very issue in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723 (1975) and held that "a consent decree is not enforceable directly or in a collateral proceeding by those who are not parties to it even though they were intended to be benefitted by it." *Id.* at 723.  In that case, Blue Chips entered into an antitrust consent decree with the government requiring it to offer shares of common stock to a group of retailers, which included Manor Drug Stores.  Manor did not purchase stock, but later sued Blue Chips for a violation of the Securities Exchange Act, claiming that it did not purchase the stock due to issues with the prospectus.  The Court refused to permit Manor as an offeree of securities pursuant to a consent decree to sue under Rule 10b-5 regardless of whether it had purchased securities.  In its Opinion, the Court explained that "… a well settled line of authority from this Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it." *Id. at 43-44, citing United States v. Armour & Co. 402 U.S. 673 (1971); Buckeye Co. v. Hocking Valley Co. 269 U.S. 42 (1925).*  In *Blue Chips*, unlike the instant case, the plaintiff was actually in the class of individuals who were intended to be a specific beneficiary of the consent decree and still was precluded from bringing suit because it did not engage in the offering of stock required by the consent order.

Similarly, in *Antonelli v. New Jersey*, 419 F.3d 267, 270 (3d Cir. 2005), the Third Circuit Court of Appeals followed suit but in a civil rights action and held that a third party could not enforce a consent order entered into by the State of New Jersey and certain cities and the U.S.

Government.  Pursuant to the consent decree, New Jersey and certain cities were compelled to take affirmative action to increase the proportion of minorities in their fire departments.  The candidates challenged the "biodata component" of the exam, because their scores on this portion caused them to fail the exam.  Among other determinations based on the Eleventh Amendment, the Court held that the candidates lacked standing to enforce the consent decree because they were not parties to it or its intended beneficiaries.  The Court cited *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750, 44 L. Ed. 2d 539, 95 S. Ct. 1917 (1975) ("[A] consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefitted by it.") and *Cicirello v. N.Y. Tel. Co.,* 123 F.R.D. 523, 526 (E.D. Pa. 1989) (indicating that it was necessary to look to the consent decree itself to see whether it contemplates enforcement by non-parties).

In *United States v. New Jersey*, 373 F. App'x 216, 217 (3d Cir. 2010), the Third Circuit Court of Appeals upheld the reasoning it expounded in *Antonelli*.  In short, *United States v. New Jersey* involved an appellant who argued that the district court erred by denying his motion to intervene because he met the requirements for intervention of right set forth in Fed. R. Civ. P. 24(a)(2).  New Jersey responded that the District Court correctly decided that appellant lacked standing to enforce or challenge the same consent decree *Antonelli* considered.  The Court of Appeals concluded that because appellant was not a party to the consent decree, he failed to show a sufficient interest in the underlying litigation as required by Rule 24(a)(2).  It followed that appellant was unable to meet the requirements of Rule 24(a)(2), and that the district court properly denied his motion to intervene.  The Court held:

> In *Antonelli*, we relied upon a line of cases which hold that consent decrees are to be viewed as contracts between the signatories and we, accordingly, found it necessary to look to the consent decree itself to determine what role, if any, was contemplated for non-

parties. *Id*. at 273; *see, e.g.*, *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975); *United States v. Armour & Co.*, 402 U.S. 673, 681-82, 91 S. Ct. 1752, 29 L. Ed. 2d 256 (1971); *SEC v. Prudential Securities, Inc.*, 136 F.3d 153, 160, 329 U.S. App. D.C. 10 (D.C. Cir. 1998). When we follow that counsel here, we find that Appellant is in precisely the same position as the plaintiffs in *Antonelli*: he is not a party to the Consent Decree, the Consent Decree does not contemplate his participation in the proceedings as he proposes, and he is not an intended beneficiary of the Consent Decree. Accordingly, we conclude, as did the District Court, that *Antonelli* controls. It follows that he is unable to meet the requirements of Rule 24(a)(2) and that the District Court properly denied his motion to intervene.

As noted in *Antonelli* and in *United States v. New Jersey*, the Third Circuit looked at the consent decree itself to determine what role, if any, was contemplated by non-parties. The Consent Order in this case is devoid of any reference of a private right of action for a non-party. In fact, Paragraph 193 of the Consent Order specifically states:

> The provisions of this Consent Order will be enforceable by the Bureau. For any violation of this Consent Order, the Bureau may impose the maximum amount of civil money penalties allowed under Section 1055(c). In connection with any attempt by the Bureau to enforce this Consent Order in federal district court, the Bureau may serve Respondents wherever Respondents may be found and Respondents may not contest that court's personal jurisdiction over Respondents.

*See*, Exhibit "A."

In accordance with the *Blue Chips* line of cases, Plaintiff's Complaint must be dismissed because she is not a party to the Consent Order and the Consent Order does not contemplate enforcement by a non-party to Consent Order.

B. **PLAINTIFF CANNOT USE THE CONSENT ORDER AS A BASIS OF LIABILITY BECAUSE IT IS AKIN TO A *NOLO CONTENDERE* PLEA, NEITHER OF WHICH ARE JUDGMENTS; THEREFORE, PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM.**

As explained above, the only basis for Plaintiff's Complaint is an alleged violation of the Consent Order between the CFPB and the Midland Entities; however, Plaintiff cannot maintain a

cause of action based upon the Consent Order because the Consent Order, like a plea of *nolo contendere,* is not a judgment that would provide any collateral estoppel effect. *See, Lipsky v. Commonwealth United Corp, et al,* 551 F.2d 887 (2nd Cir. 1976).

The Court of Appeals of the Second Circuit addressed this issue in *Lipsky*. In *Lipsky*, the plaintiff agreed to the exchange of stock in which he was the sole stockholder for the stock of the defendant. The contract required that the defendant register the stock. The defendant did not register the stock and plaintiff filed suit for rescission of the contract. When plaintiff filed the complaint, he attached a complaint that was filed with the Securities Exchange Commission (SEC) involving unrelated misleading statements by the defendant, which were resolved by a consent order. As a result, defendant filed a motion to strike that portion of the complaint, claiming that it was impertinent and also moved to dismiss the complaint on other basis. The district court granted both motions. On appeal, the Court of Appeals for the Second Circuit upheld the grant of the motion to strike the portion of the complaint referring to the SEC complaint which was resolved by a consent order. In so holding, the Court explained:

> This is a consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues. Consequently, it cannot be used as evidence in subsequent litigation between that corporation and another party. Fed. Rules Evid., Rule 410, 28 U.S.C.A., prohibits a plea of nolo contendere from being later used against the party who so pleaded. Although CUC did not, technically, plead nolo contendere to the SEC's complaint, nolo pleas have been equated with "consent decrees" for purposes of the proviso to §5(a) of the Clayton Act. *City of Burbank v. General Electric Co.*, 329 F.2d 825, 834 (9th Cir. 1964); *Atlantic City Elec. Co. v. General Electric Co.*, 207 F. Supp. 620, 628 (S.D.N.Y. 1962); *State of Minnesota v. United States Steel Corp.*, 44 F.R.D. 559, 583 (D. Minn. 1968). The reason for this equivalence is that both consent decrees and pleas of nolo contendere are not true adjudications of the underlying issues; a prior judgment can only be introduced in a later trial for collateral estoppel purposes if the issues sought to be precluded were actually adjudicated in the prior trial. *Buckeye Powder Co. v.*

9

> *E.I. DuPont*, 248 U.S. 55, 63, 63 L. Ed. 123, 39 S. Ct. 38 (1918); *International Shoe Mach. Corp. v. United Shoe Machinery Corp.*, 315 F.2d 449 (1st Cir. 1963); *Bronxville Palmer Ltd. v. State of New York*, 18 N.Y.2d 560, 223 N.E.2d 887, 277 N.Y.S.2d 402 (1966). The consent decree entered into by the SEC and CUC was the result of private bargaining, and there was no hearing or rulings or any form of decision on the merits by the district court.

*Lipsky*, 14-16.

In the present case, Plaintiff's sole basis for liability is an alleged violation of the Consent Order between the CFPB and the Midland Entities and there is no determination or admission of liability. The Consent Order is akin to a settlement agreement. The Consent Order specifically states:

> Respondents have executed a "Stipulation and Consent to the Issuance of a Consent Order," (Stipulation), which is incorporated by reference and is accepted by the Bureau. By this Stipulation, Respondents have consented to the issuance of this Consent Order by the Bureau under Sections 1053 and 1055 of the CFPA, 12 U.S.C. §§5563 and 5565, without admitting or denying any of the findings of fact or conclusions of law, except that Respondents admit the facts necessary to establish the Bureau's jurisdiction over Respondents and the subject matter of this action.

*See*, Exhibit "A," ¶2.

Therefore, it is clear that the Consent Order does not establish liability and in light of the fact that Plaintiff pleads no basis of liability other than the alleged violation of the Consent Order, the Complaint must be dismissed, not simply sanitized of mention of the Consent Order.

Similarly, in *L.C. v. Cent. Pa. Youth Ballet*, the United States District Court of the Middle District of Pennsylvania granted defendant's motion to dismiss a count that was based solely on plaintiffs' allegation that defendant violated a consent decree he entered into in Cumberland County Juvenile Court. 2010 U.S. Dist. LEXIS 66060, at *26 (M.D. Pa. July 2, 2010). The Court noted that … Pennsylvania courts have held that "[a] consent decree is not a legal determination by the court of the matters in controversy but rather is merely an agreement

between the parties, that is, a contract binding them to the settlement's terms." *Id.* at *26 (M.D. Pa. July 2, 2010)(citing *Pennsylvania Higher Educ. Assistance Agency v. Lal,* 714 A.2d 1116, 1118 (Pa. Commw. Ct. 1998). The District Court further determined that the consent decrees are akin to a plea of *nolo contendere* in that neither results in an adjudication of guilt. *See, e.g., Commonwealth v. Smith*, 151 Pa. Super. 113, 30 A.2d 339, 346 (Pa. Super. Ct. 1943) (When a plea of *nolo contendere* "is tendered and accepted it is not the province of the judge to adjudge the defendant guilty or not guilty.") (citations and internal quotations omitted); *see also Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("[B]oth consent decrees and pleas of *nolo contendere* are not true adjudications of the underlying issues.") (addressing consent decrees made pursuant to the Clayton Act, 15 U.S.C. §§12-27).

Because of the terms of the Consent Order and the lack of a collateral impact on a entirely different matter, Plaintiff's Complaint should be dismissed because no other allegations of liability exist except for a violation of the Consent Order.

### C. PLAINTIFF'S COMPLAINT FAILS MUST BE DISMISSED BECAUSE IT FAILS TO ALLEGE ANY VIOLATION OF THE FDCPA.

As detailed in the facts, the only allegations against Midland are related to their alleged failure to abide by the terms of the Consent Order. Plaintiff does not contend that she did not owe the debt. She does not allege that Midland Funding, LLC does not own the debt. She does not assert that Midland lacks possession of the account documents that Plaintiff claims were not produced in the collection action. Plaintiff's only theory of a violation of the FDCPA, and, by extension, the FCEUA, is that Midland engaged in conduct that purportedly failed to comply with the terms of the Consent Order. Without nothing more, in accordance with the previous arguments set forth above, Plaintiff's Complaint fails to state a claim, and must be dismissed with prejudice.

### D.  PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR A VIOLATION OF THE FCEUA BECAUSE PLAINTIFF HAS NOT ALLEGED THAT SHE SUSTAINED ANY ASCERTAINABLE LOSSES.

The FCEUA is a pass-through statute providing an exclusive remedy for violations of the FDCPA under 73 P.S. §201-9.2.  *See also* 73 P.S. §2270.4 (a) and 73 P.S. §2270.5 (a).

Pursuant to the FCEUA:

> (a)  BY DEBT COLLECTORS.-- It shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act (Public Law 95-109, 15 U.S.C. §1692 *et seq*.).

73 P.S. §2270.4(a).  In addition, 73 P.S. §2270.5 sets forth the manner in which damages are assessed providing in pertinent part as follows:

> (a)  UNFAIR TRADE PRACTICES.-- If a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the act of December 17, 1968 (P.L. 1224, No. 387), known as the Unfair Trade Practices and Consumer Protection Law
>
> …
>
> (c) REMEDIES.-- Remedies available for violation of this act and the Fair Debt Collection Practices Act (Public Law 95-109, 15 U.S.C. §1692 *et seq*.) **shall not be cumulative, and debt collectors who violate this act and the Fair Debt Collection Practices Act shall not incur cumulative penalties.**

Plaintiff's Complaint fails to allege that she sustained any ascertainable loss.[1]  Furthermore, Plaintiff's Complaint fails to allege a claim for a violation of the FDCPA; therefore, no claim for a violation of the FCEUA exists and must be dismissed.

---

[1] Plaintiff asserts a false flag argument for actual damages in paragraph 18 of his Complaint.  However the fact that Plaintiff allegedly incurred costs in defending himself in the collection action is not an ascertainable loss, but, rather, the result of Plaintiff's failure to pay his debt obligation owed to Midland Funding, LLC.

### E. NO CLAIM FOR IMPROPER DEBT COLLECTION EXISTS PURSUANT TO THE UTPCPL.

The only means with which to advance a UTPCPL claim against a debt collector is by application of the FCEUA. *See* 73 P.S. §2270.2- Scope of Act - ("This act establishes what shall be considered unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts"). There is no independent basis to assert a UTPCPL claim. To the extent that Plaintiff seeks to recover under the UTPCPL independent of the FCEUA, such claims lack merit and should be dismissed.

### V.  CONCLUSION

Based upon the arguments set forth above, Defendants respectfully request that this Court grant their Motion and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

BY: *s/ Danielle M. Vugrinovich*
DANIELLE M. VUGRINOVICH, ESQUIRE
**Attorney for Defendants, Midland Funding, LLC and Midland Credit Management Inc.**